May it please the Court, my name is Benjamin Gruenstein, and I represent Terrell Saxon on appeal as I did in the habeas proceedings below the district. Mr. Gruenstein, where in the McNeil footnote does it suggest anything other than we're not considering this issue one way or the other? It doesn't, Your Honor. That's after. So if Judge Ramos finds that the McNeil footnote plainly suggests the availability of the relief that you're seeking here. And I just don't see that language in the footnote. But the McNeil footnote clearly suggests that the Court was not ruling. Right. It suggests that there's an open issue. Suggests that there's an open issue. And it suggests it lays out what the argument would be if a future defendant wanted to raise that argument. It also, the McNeil footnote also cites to the Solicitor General's brief, which also lays out that argument and says that it's a plausible argument that a defendant could bring. We are not. It's a plausible argument that a defendant could bring when the defendant is not, under the express terms of the relevant retroactive statute, entitled to apply for resentencing? Does anyone, either the Supreme Court or the Solicitor General, ever say that? Your Honor, to be clear, we never relied on McNeil for support for the ultimate argument that the ACCA enhancement should be dismissed. What we relied on McNeil for was the argument that this lawyer, trial counsel, was ineffective for failing to read, to research the issue, to find McNeil, and to discuss the issue. But it's clearly this would have been an innovative, cutting-edge, unprecedented argument, right? There was no case had so held that had gone this way? It's correct that there was no case that had gone this way. Is that ineffective assistance to fail to put forth such a creative argument? Your Honor, I do dispute the characterization that it would be a creative argument, because the argument was clearly anticipated. For such an unprecedented argument? I mean, there was no support for it. Well, Your Honor, there was support for it in the sense that the Supreme Court said that the issue was open. No, no, no. I would disagree with that, Your Honor. There was support for it in all the other cases interpreting ACCA. The Eleventh Circuit had already thrown it out, the only circuit that ever considered it. Well, the Eleventh Circuit only ruled a few months ago. There were two other district courts that addressed it in this circuit and agreed with it. Afterwards. Afterwards. That's true. But there was also, prior to Mr. Saxony even being arrested, there was another defendant in the Southern District who did raise this issue, also represented by the federal defenders. That argument was made, and yet, trial could not appear. The context is Mr. Saxon's indicted on a gun count which carries a mandatory minimum of 15 years, and counsel persuades the government to drop the gun count and instead to put forth only drug counts. There's no mandatory minimum. And he winds up with a sentence of 120 months. So it's hard to understand how this could be ineffective assistance when you put it into the big picture. Well, Your Honor, I think where you're getting at is to where the prejudice is, and what trial counsel did is she convinced the U.S. Attorney's Office to drop the gun count, but at the same time brought him in to admit to a drug count. So apparently someone could quarrel with her not researching the issue. I think that's a fair argument. But I don't think it's just a matter of prejudice. I think when you are evaluating the representation, do we not look at the complete picture of the representation? And if I could just add something to that, is not your Strickland first-prong argument dependent on a finding by us that the argument would have had merit, that she would have won the day on that point if she had researched it, which is at least open to dispute because in the Rowley case, which was decided about the same time, in the context of the Federal Fair Sentencing Act, this very court refused to apply retroactively the Fair Sentencing Act to people who were sentenced before the effective date of the statute, an equally arbitrary — an equally arbitrary standard? Your Honor, it is my position that the Court does not need to reach the merits of the ACCA claim because counsel here was ineffective for, A, failing to research, to do any legal research on the critical issue in this case, which is undisputed that this was the critical issue in this case, and failing to make a motion that would have been likely meritorious, which is the standard that this Court established in Cornell. There is — Likely meritorious? Likely meritorious. And Exhibit A for the fact that this argument would have been likely meritorious is that the district judge accepted it. What about prejudice, then? Prejudice, the — what prejudice — the first question on prejudice is would the outcome of the case have been different. And it is clear here that the outcome of the case would have been different. Had counsel made the motion, he never would have gone into the U.S. Attorney's Office, would never have admitted to these drug crimes, would never have pled guilty to these drug crimes. Which goes to the second issue, which is, well, then what would the government have done? This is a little bit of an unusual situation, because we're talking about prejudice in the context of possible government conduct in this case. That's right, Your Honor. And the way the government has tried to say what it would have done is simply by asserting in its brief it would have moved for an enhancement that it never actually contemplated or discussed with my client or his counsel, and that it would have brought in another — Is this a question of fact? You know, the trial judge made a finding as to what the government would have done. It is a question of fact, but ultimately there was an error of law, because the judge below relied on the government's assertion in its brief, an unsworn statement of that argument. But really, really where we are — this is my understanding of a prejudice argument — the crux of it is whether it's appropriate for a district court judge in the context of an assessment of prejudice to rely on the government's unsworn statements about what it would have done, period. That's absolutely correct, Your Honor, and we say that that is — that was an error of law. Don't we usually — don't we usually — or don't trial judges usually accept government representations of this sort? I mean, you don't put an AUSA on the stand to testify to what — to these kinds of things, do you? You don't necessarily put an AUSA on the stand, however, in any case where there is a factual dispute, an AUSA — at least in my experience, an AUSA will put in an affidavit with relevant facts. Is that right? Really? What's that? Is that right? You're kidding. No, absolutely, Your Honor. If there's going to be a — I'll go look back through my files, but I don't think so. Your Honor, in my — Usually it's a proffer. It's a proffer. I mean, the government makes a proffer, and usually defense counsel doesn't contest it on this kind of a thing, I would think. Especially given the practice of the United States Attorney's Office of enhancing wherever it doesn't get its way in the initial. And given the excellent reputation of the U.S. Attorney's Office, right? Absolutely. And the — I'm not quarreling with that. What I am quarreling with is because the AUSA did not put in an affidavit, and he could not have put it — But what — but was it in the form of a letter? No. It was in the form of — Or of a statement. It was written in a brief that he would have — Okay. And the brief was signed by the government, by the prosecutors in that case? It was, Your Honor. And we — What?  Rule 11. Mr. Bernstein. Yeah. First, I'm not sure that I'm aware of an affidavit being necessary, and if you could cite some case law, that would be terrific. But second, a brief from the government signed by a government attorney is a representation that the statements in the brief are accurate and that they are going to abide by those and that they're supported. Well, just — this is a — in the end, this is a civil action that's subject to Rule 11. It's a Rule 11 statement. Your Honor, the reason that it was so important that there actually be a sworn statement is so that we could have tested the representation. There is no way that the AUSA could have said under oath, in the hypothetical world in which you had brought the motion and we had lost, this is what we would have done. Have we ever — so, I ask a second question, which is, have we — is there any case law on this that requires a prosecutor in this context to provide an affidavit in lieu of an assertion in a brief or a letter to the court? I believe there is. I know there is an Eighth Circuit case, Theis, which did say — where the government said we would have superseded with a crack charge, and the Eighth Circuit said, well, then you should have — you should have actually done it. You can't simply represent what you would have done. And I do believe there is a case that an affidavit would have had to be brought. In fact, the rule actually generally goes against habeas petitioners, that a habeas petitioner — and this, there certainly is law — could not simply assert in his brief, this is what I would have done, but rather has to put in an affidavit. If it goes back and they submit an affidavit with the statement that you say is unsworn, what then? Well, if it went — if it went back, then we would have an opportunity to cross-examine the AUSA and say, how can you possibly say now you would have superseded with a heroin charge that had already been dropped by the state and which there were weaknesses with, and you would have also superseded with a — or you would have added a sentencing enhancement that you never even discussed, how do you know, how can you sit your case here? You were able to make that argument, though, right? What's that? Weren't you able to make that argument? We did. We certainly made that argument, and then we thought — It wasn't cross-examination, but you had — certainly had the opportunity to make that argument. We did make that argument, Your Honor. All right. Do you have some time for — go ahead. I — these gentlemen will educate me, a mere district court judge, on some of these things, but under the — The most powerful person in the room. Under the likely meritorious standard, is it of any moment at all that we might disagree with Judge Ramos on the ultimate merits of the — of the argument that was not made? I think it may be of some moment, but if the question is, was it likely meritorious, was there a chance this would have succeeded, the first question is, would the district judge have accepted it? That, we know the answer to be yes. Then there could be a question of, ultimately, had the government taken an — What if he was wrong? Yes. Well, had the government taken an appeal? And, frankly, the government has not taken an appeal in any of the cases where the Class B issue was at stake. So I think as far as considering on the — on the ineffectiveness point, merely failing to bring a likely meritorious, even if ultimately wrong, motion would be ineffective and certainly failing to research it, on the prejudice prong, all we have to show is a reasonable probability. We know the district judge, what their — what his opinion was, and then that would be impacted but not necessarily undermined by, ultimately, the Second Circuit's decision. Thank you. You have some rebuttal time. We'll hear from the governor. May it please the Court, my name is Danielle Sassoon. I'm an assistant U.S. attorney in the Southern District of New York, and I represent the United States on appeal. This Court should affirm the dismissal of Mr. Saxon's 2255 petition for several reasons, but I'd like to pick up where Mr. Gruenstein left off and with Judge McMahon's question about whether this Court has to reach the merits of the ACCA question in order for Mr. Saxon to prevail on appeal. And it absolutely does. And I'll point the Court to the decision of the Second Circuit in Harrington at page 130, and there the Court said that if the claim is ultimately meritless, then there is no prejudice. And that case presented a question just like the one here. The defendant was claiming that his attorney should have made an argument that his prior State offense did not count as an ACCA predicate. But that doesn't mean that we must deal with the issue. The Court must deal with the issue if it finds for Mr. Saxon. In order to affirm Judge Ramos's decision, there are several independent grounds that the Court can reach in order to affirm. But in order to reach all of the arguments that Mr. Saxon is making, absolutely the Court would have to reach the merits of the ACCA argument and find that it was meritorious. And I'd like to address one other confusion that I think arose from the first few minutes of this argument, where the Court has said, used this language of likely meritorious. That has been in the context of the prejudice inquiry. For example, in considering what a defendant might have done in a counterfactual scenario, like whether he would have accepted an alternative plea, or whether that defendant would have decided to go to trial. The only other place the Court has used that language was in Cornell versus Kirkpatrick, where the Court said that counsel failed to raise a meritorious venue objection that under binding precedent would have dictated a result favorable to the defendant. The only reason that there's any language in that opinion about whether something is likely meritorious is because the venue issue was an issue that had to be submitted to the jury. So although the Court can say this was a meritorious issue under binding precedent, because it would have had to be submitted to a jury, a Second Circuit panel is not in a position to say absolutely what would have happened under those circumstances. But where you have a legal issue ---- Roberts. Defense counsel apparently failed even to consider the issue of the ACCA question, whether the third conviction actually fit within. Is that not ineffective assistance? Should counsel have not at least considered the question and looked at it? As this Court mentioned earlier, this is not an attorney who is asleep at the switch. She had a strategy. She negotiated. She, in fact, was able to get the defendant ---- Did she have a look at the question? Everyone else in her office was looking at the question. There can't be a unique standard for the Federal Defender. So you have to consider more generally what is required of defense counsel. Would any reasonable defense counsel have looked at the question, thought about it? There is not a single case saying that counsel has an obligation to find and raise arguments on open legal questions. So had there been binding precedent? That wasn't the question which you've now failed to answer three times. Should she have looked at it? I mean, would a reasonable attorney have at least considered the issue? Ideally, an attorney would consider the issue, but constitutionally, no, she was not required to look at the issue. Because ultimately, you have to say, did she fail to find a binding precedent and fail to bring it to the attention of the court? And that's not what happened here. She failed to raise a novel legal issue. And whatever the reason for that, whether because she had done research and ---- Well, if it had not been novel, if it had been fairly clear, then we would have a serious problem, right? I mean, it's ---- she's fortunate that it indeed was a novel question. Yes. If it had been dictated by Second Circuit or Supreme Court precedent, absolutely. And that would be like the Cornell v. Kirkpatrick case. But I'd also like to draw the Court's attention to the Toledo case in the Second Circuit. And there, counsel had failed to argue that the defendant's prior Connecticut Alford pleas were not ACCA predicates. And there, as the Court said in Toledo, all the building blocks for a winning argument were already there. The Supreme Court's case law about the categorical approach and the modified categorical approach was already completely laid out. It had just never been applied to this context. Could you turn to the prejudice analysis? Yes. Turning to the prejudice analysis, in this context, I'd like to start with a very important quote from McNeil. And there, the Court said that the key to whether a prior offense is a serious drug offense, quote, can only be answered by reference to the law under which the defendant was convicted. And that's at page 820. Now the open legal issue is whether that rule applies to this defendant. That rule applies, but the way it applies might be different than the outcome that the Court reached in McNeil with respect to a prospective sentencing change. So when you have a retroactive sentencing regime under which a defendant is actually re-sentenced, then the law under which that defendant was convicted has been modified. He's now been convicted under this new State sentencing regime. But you don't have to go that far, do you? He wasn't – not only was he not actually re-sentenced, he could not have been re-sentenced because the law did not apply to him. He was out of jail. That's correct. And as this Court held in Rivera and as the Eleventh Circuit held with respect to this specific Class B felony-type conviction, if a defendant is not eligible or if he has not been re-sentenced, the fact of his underlying conviction has not changed. He remains convicted under the previous sentencing regime. And under the defendant's proposed rule, it would end up running headlong into what the Supreme Court has said in McNeil and in Rodriguez and what the statute itself says. Under their scenario, if a defendant is serving a sentence of, let's say, over 11 years, he's not eligible to be re-sentenced or he, in fact, applies and is denied re-sentencing, under their proposed rule, that defendant would actually be serving a sentence beyond the maximum prescribed by law. And that simply doesn't make sense, as the Supreme Court has already noted in interpreting this exact statute. On the other hand, the defense claims there are some absurdities with respect to the government's position about similarly-situated defendants being treated the same. But that was also true under the Fair Sentencing Act. I mean, the arbitrary fact that you got sentenced on August 2nd, 2010, as opposed to August 4th, 2010, nothing could have been more arbitrary, and yet this Court held that the August guy, the August 2nd guy, was out of luck. That's correct, and that's already part and parcel of some established features of this statute. For example, the circumstance in McNeil. Same state offense, but if you committed it before the prospective sentencing change, you're treated one way. If you commit it after, you're treated another. The Rivera case, if you've been convicted of a Class C felony conviction, that will remain an ACCA predicate. Whereas if you were convicted of a Class B and Class C felony, you might be re-sentenced, and then it won't be an ACCA predicate. Defendants in two different states committing the same offense conduct might be treated differently, depending on the statutory maximum in that particular state. So is this an argument, I mean, Mr. Gnusse made a very specific argument about the absence of an affidavit. And the reliance by the district court on an unsworn statement in a brief. So it's a very specific argument relating to prejudice. Are you suggesting that we don't have to deal with that argument for the reasons that you just outlined, or do we have to deal with the argument that he made? The court does not need to reach that, because it can decide the case by saying the counsel was not ineffective in failing to raise. Well, if we get to prejudice, we're in the prejudice side of things, do we need to reach the argument that was made by your adversary? Only if this Court determines that the ACCA claim is meritorious. If the Court finds that it's. We do have to come to grips with the underlying merit. Was Judge Ramos right or wrong when he bought into the ACCA argument? Correct, but if the court finds that the ACCA argument is meritless, it doesn't need to reach this issue of the affidavit. But suppose Judge Loyer decides he doesn't really want to deal with that argument today. He'd like first to consider the argument that you should have done as your office never does, and put in an affidavit instead of making a proffer about what you would have done in other circumstances. Think very carefully about what you want. The government is not presently aware of any case law requiring such an affidavit. And I'd also like to emphasize that in this case, Judge Ramos knew the whole landscape of the case. He wasn't only relying on the government's representation. I do have a little discomfort with a trial judge, in essence, trying to determine what the government would have done if the ACCA claim had succeeded. I mean, is it fair to hold the defendant to that kind of a prediction as to what might have happened? With respect to the facts of this particular case, the court had a lot more to go on than the representation of the government. There was the Fatico hearing. But there's still, the trial court is saying, if this had happened, then I think this would have happened. And I'm not sure that it's fair to a defendant to then use that kind of, I mean, it's not speculation, but it's trying to determine what would have happened. And I just don't know if it's fair to hold the defendant to that kind of thought process. Prejudice analysis sometimes necessarily leads to consideration of a counterfactual world. Well, I mean, certainly it's fair to consider what the defendant would have done. I mean, would the defendant have insisted on going to trial? I think that's fair. But it's, I'm having a little bit of difficulty on what the government would have done. Here it would be artificial to say what would the defendant have done if the charges had remained static. Except that people keep asking you about not what the defendant would have done, but what you would have done. Now, one can say that Judge Ramos has been a judge for a long time. Before that, he was an assistant United States attorney and a defense counsel in private practice. And he knows a lot about how the United States Attorney's Office operates. And he probably has in the back of his head the fact that you guys routinely supersede and enhance if you don't get your way during plea negotiations. But is that a fair basis for him to go ahead and accept a proffer as opposed to sworn testimony from your office? At most, if this court decides that more information was necessary and has also found that counsel was deficient and that the act of claim was meritorious, all of which we disagree with. At most, a remand would be appropriate, setting forth the appropriate legal standard to evaluate the government's counterfactual world rather than a straight reversal. Thank you. We'll hear the rebuttal. Briefly, Your Honor, I did want to bring the court's attention to Kulhavik v Holder 571 F3rd 296, where the Second Circuit said, quote, an attorney's unsworn statements in a brief are not evidence. And that's what we relied on in our brief, both to this court and below. And I should also correct when I said that my experience has been that an affidavit needs to put in. And I was referring to my recollection that before a suppression hearing would happen, for example, the defendant would have to put in, to dispute a fact, would have to put in something. Absolutely correct. When was the last time you saw an affidavit from the United States Attorney's Office in this district? In my district. As a typical matter, it is the defendant who is putting issues into play. But it's not an even playing field. It's, it never is. You're right. Finally, I did want to just make one final point, which is, even if the court were to credit the unsworn statement, there is still another legal error that the court made. Which is that we challenged the strength of the evidence on the heroin charge, the likelihood that the government would have succeeded in getting the attempted murder enhancement. And the court said, I do not need to consider this, the merits, because these claims would have been colorable. Colorable is not the right standard. The right legal standard is, would there have been a reasonable probability that Saxon would have gone to trial? And even if the government had thought of all of these creative ways to enhance the sentence, the more it would have enhanced, the more likely it would have been that Saxon would have gone to trial on one of them. And finally, the court said below, even- That can't be right. I mean, because I thought that you were, you're saying that the, the, the greater the possible exposure, the more likely he would have gone to go to trial? I should be clear. All of the various things that the government would have done only would have brought the defendant's sentencing exposure up to the sentencing range of the plea agreement. But the more he had to fight at, the more likelihood he would have gone to trial against one of them. And if I could just make one final point, which is the court said below, even if the government had only superseded with a heroin charge, the guidelines would have been the same as in his plea agreement. But the court failed to realize that if it had done that, and the defendant went to trial on the gun charge and won, the gun would not have been part of the relevant conduct that the court would have considered. So the defendant would have been better off in a situation where the only charge was heroin, because then there would not have been a gun which certainly had a significant impact on the 3553 factors that the court considered below. Thank you, Your Honor. Will reserve decision.